[Cite as *Hurley v. Austin*, 2013-Ohio-5592.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99992**

---

## ROSEL C. HURLEY, III

PLAINTIFF-APPELLEE

vs.

## LAVERNE AUSTIN

DEFENDANT-APPELLANT

---

## JUDGMENT:
AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-337323

**BEFORE:** Celebrezze, P.J., Jones, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** December 19, 2013

**ATTORNEYS FOR APPELLANT**

Larry I. Madorsky
2101 Richmond Road
La Place Mall - Upper Level
Cleveland, Ohio   44122

Bruce P. Bogart
2101 Richmond Road
Beachwood, Ohio   44122


**FOR APPELLEE**

Rosel G. Hurley, III, pro se
1229 East Boulevard
Cleveland, Ohio   44108


**ATTORNEY FOR MINOR CHILDREN**

David E. Mack
4141 Rockside Road
Suite 230
Seven Hills, Ohio   44131

FRANK D. CELEBREZZE, JR., P.J.:

**{¶1}** Appellant, Laverne Austin ("mother"), brings this appeal alleging the trial court erred in adopting the magistrate's decision setting child support obligations for appellee, Rosel Hurley, III ("father"). Mother asserts that the magistrate committed several errors, as set forth in her objections to the magistrate's decision, which the trial court should have sustained. After a thorough review of the record and law, we affirm in part, reverse in part, and remand.

## I. Factual and Procedural History

**{¶2}** Mother and father were married for ten years and produced three children. Father was in the military, followed by a career as a police officer before going to law school and becoming a lawyer. Mother was employed by the Cleveland Board of Education. Mother and father's relationship became strained and they separated in 2011. Mother maintained custody of the children during this time. Father started work as an assistant prosecutor at the Cuyahoga County Prosecutor's Officer on October 1, 2011. During his short tenure there, it was discovered that he misused computer resources. He was indicted and pled guilty to three criminal charges related to this activity, one of which was a fifth-degree felony. As a result of the charges, father resigned approximately eight months after starting this job to avoid being fired, and his license to practice law was suspended pending disciplinary proceedings after his convictions. Father also received income from rental properties, his military pension, and disability pension.

{¶3} The parties separated on March 1, 2011, and filed for a dissolution of marriage on July 5, 2011, but they could not reach agreement on several issues. As a result, the dissolution was converted to a divorce and a trial date was set. The parties reached an agreement on issues including custody, shared parenting rights, and a division of property on January 7, 2013. However, they did not agree on child support, and that issue was referred to a magistrate for hearing.

{¶4} Prior to the agreement, mother filed a motion for temporary support on September 20, 2011. A hearing for temporary support was had on May 14, 2012. As a result, a child support computation worksheet was generated on May 18, 2012, which set father's total income at $85,200 and calculated monthly support payments at $1,303.64 for three children. Another worksheet, created the same day, calculated temporary monthly support obligations for two children at $1,117.32. A temporary support order was issued on July 11, 2012, imputing income to father in the amount of $85,200 and setting his child support obligations for two children at $1,058.67 per month ($529.34 per child) retroactive to September 20, 2011.

{¶5} Mother filed a notice of objection to the magistrate's decision, requesting a hearing, but the notice did not state the nature of the objections. A hearing was conducted on September 12, 2012, on the objections. The magistrate's decision that resulted from the hearing details mother's objections: The parties present basically stated that the defendant's request for a judicial hearing is for the court to correct two clerical errors. First, that the party to be reimbursed for health insurance payments should be defendant, mother, and two, that the marginal cost to cover the children for health insurance is $909.12. The second correction caused the child support figure to change slightly.

**{¶6}** As a result of the objections, father's child support obligation was increased to $1,076.76 per month.

**{¶7}** Apparently, mother failed to raise objections related to support for the couple's eldest child, M.H. She was 17 at the time of the instigation of the case and turned 18 in October 2011, approximately 20 days after the motion for temporary support was filed. There is no evidence in the record that mother properly objected to the lack of support for M.H., apart from affidavits from her and her attorney.

**{¶8}** Father filed a motion to modify child support on September 19, 2012, after he lost his job at the prosecutor's office, which was later withdrawn after the court set permanent child support obligations.

**{¶9}** The matter proceeded to trial on the issue of support. A hearing was held on February 12, 2013, where father and mother testified. Father attempted to demonstrate that he could no longer earn the amount listed on the magistrate's child support worksheet because of the suspension of his license to practice law and the loss of his job. He also submitted evidence documenting payment for certain expenses of the children and a $500 payment to mother. Mother argued that the payments were gifts according to case law and the requirement that all child support payments go through the Cuyahoga County Child Support Enforcement Agency ("CSEA"), as stated in the July and September temporary support orders. Mother also argued, with support from case law, that income should be imputed to father at the same level as the temporary order because his criminal acts should not decrease the amount of support.

{¶10} The magistrate's order documents a lack of evidentiary support of mother's contention that she properly raised objections regarding support for the eldest child. The magistrate also credited father with certain payments that occurred before the temporary support order was issued. Finally, the magistrate determined that appellant could no longer earn the amount on which the temporary support order was based and that mother had not supplied evidentiary materials supporting her claim that father is capable of earning close to what he was making while employed at the prosecutor's office. The magistrate calculated father's imputed yearly income as $55,828. Based on this figure, the magistrate ordered father to pay $788 per month, plus a two percent processing charge.

{¶11} Mother filed objections to this decision supported by affidavits and a transcript of the February hearing. In the objections, mother raised issues regarding support for their eldest child, the amount of income imputed to father, and the magistrate's decision to credit father with payments made on behalf of the children that did not go through CSEA — especially those payments made for the eldest child who was not the subject of a support order. The trial court overruled mother's objections and, on May 17, 2013, adopted the magistrate's decision. Mother then filed the instant appeal assigning three errors for review:

I. The trial court erred and abused its discretion in failing to impute [father's] income as an attorney when calculating child support.

II. The trial court erred and abused its discretion in failing to order temporary child support for the minor child [M.H.]

III. The trial court erred and abused its discretion in treating payments to third parties as child support herein.

## II. Law and Analysis

### A. Amount of Imputed Income

{¶12} Mother first argues that the court erred in imputing only $16,328 to father for purposes of child support calculations.

{¶13} R.C. 3119.02 instructs the court to determine the amount of child support based on a child support computation worksheet. The worksheet must be populated by income data according to the definitions set forth in R.C. 3119.01(C) for the computation of income. This statute "authorizes a court to impute income to a parent whom the court finds is voluntarily underemployed [or unemployed], for purposes of calculating child support." *Breedlove v. Breedlove*, 4th Dist. Washington No. 08CA10, 2008-Ohio-4887, ¶ 14. R.C. 3119.01(C)(5)(b) defines income to include "the sum of the gross income of the parent and any potential income of the parent" for a parent the court determines is voluntarily unemployed or underemployed. Potential income is further defined in R.C. 3119.01(C)(11) to mean "[i]mputed income that the court or agency determines the parent would have earned if fully employed * * *" and "income from any nonincome-producing assets of a parent * * * if the income is significant." The statute in effect at the time mother's petition was filed directed a court or child support enforcement agency to examine the following criteria to determine the amount of income that should be imputed:

(i) The parent's prior employment experience;
(ii) The parent's education;
(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) Any other relevant factor.

Former R.C. 3119.01(C)(11)(a).

{¶14} In deciding if an individual is voluntarily unemployed, "[t]he test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned." *Woloch v. Foster*, 98 Ohio App.3d 806, 811, 649 N.E.2d 918 (2d Dist.1994). Moreover, "[a] child support obligee who claims that the obligor is voluntarily underemployed has the burden of proof on that issue." *Fischer v. Fischer*, 2d Dist. Clark No. 11 CA 81, 2012-Ohio-2102, ¶ 24; *King v. King*, 4th Dist. Jackson No. 12CA2, 2013-Ohio-3426, ¶ 21.

{¶15} The child support computation worksheet indicates father was receiving $33,000 per year in pension and disability benefits as well $3,500 per year from retained rental properties. The magistrate determined that father was voluntarily unemployed. An additional $16,328[1] was imputed to father, bringing his total yearly income to $55,828. Mother claims the magistrate and trial court erred in imputing only minimum wage to

---

[1] This constitutes yearly earnings from minimum wage employment.

father when he had made $51,000 per year from his previous job at the prosecutor's office in addition to his pension benefits. Mother argues that because his voluntary criminal activity caused the loss of this job, child support payments should be calculated using father's previous income level.

{¶16} Here, the trial court recognized that father was voluntarily unemployed based on case law holding that a criminal conviction is a voluntary act that should not relieve individuals of their child support obligations. *Drucker v. Drucker*, 8th Dist. Cuyahoga No. 76139, 2000 Ohio App. LEXIS 2471 (June 8, 2000); *Groves v. Groves*, 12th Dist. Clermont No. CA2008-06-059, 2009-Ohio-931. However, the court did not impute the level of income mother wished. At the February 12, 2013 hearing, mother offered little evidence documenting father's earning potential. Apart from father's earnings from his position at the prosecutor's office, the record contained a document from father's bankruptcy proceedings stating his income for 2007 through 2009, which went from $76,552 in 2007 to $9,216 in 2008. The document also indicated father had earned $10,000 in 2009 by the time the document was filed on October 4, 2010.[2]

{¶17} The magistrate's decision includes an in-depth analysis of *Groves* and *Drucker* as well as *Brownlee v. Brownlee*, 8th Dist. Cuyahoga Nos. 97037 and 97105, 2012-Ohio-1539. The magistrate then reviewed each factor included in former R.C.

---

[2] There is no explanation in this document as to why the amount is for year 2009, but seems to indicate it was actually for yearly income for 2010.

3119.01(C)(11)(a) and listed the evidence presented and its findings on each one. Regarding the seventh factor, the magistrate noted,

> Neither party presented any evidence with regard to [father's] ability to generate income whether as an attorney or from business. What little information there is in the record primarily concerns [father's] real estate investments. The Magistrate finds that [father] has been buying inner city properties with the aim to either fixing them up and selling them or renting them out. At the time of trial he testified that he owned five such properties, of which one has a tenant who is not paying any rent. He has been able to rent one of the other properties, 9732 Parkgate, Cleveland, Ohio. [Father] testified that the monthly income from that property exceeds the monthly expenses. He estimated that the property generates about $3,500.00 per year after expenses. The other three properties are vacant.
>
> [Father] filed for bankruptcy protection on October 4, 2010. According to Schedule I, Current Income of Individual Debtor(s), he listed his occupation as "Lawyer" and his employer as "Arnuma Law Office." * * *
>
> * * *
>
> The only other possible source of the $76,000 gross income that [father] declared he earned in 2007 was personal security and event security that [he] noted he was involved in from 1996 to 2010. It is also possible that the figure represents the amount [father] earned from his employment with the Cleveland Police Department before he went out on disability. Whatever the case, the Magistrate cannot fill the void by guessing.
>
> Whatever the source of the Plaintiff's income in 2007, there is no question from the little evidence in the record that until he joined the prosecutor's office in 2011 the Plaintiff's income from the practice of law never exceeded $13,333.00.

**{¶18}** R.C. 3119.01(C)(11)(a) was modified effective September 28, 2012, to include a parent's decreased earning capacity due to a felony conviction as one of the statutory considerations. R.C. 3119.01(C)(11)(a)(x). The trial court did not address this factor, but instead correctly used the statute in place at the time the petition was filed.

*See Glassman v. Offenberg*, 8th Dist. Cuyahoga Nos. 85838, 85863, 87175, 2006-Ohio-3837; *Flege v. Flege*, 12th Dist. Butler No. CA2003-05-111, 2004-Ohio-1929, ¶ 18. But the court noted that mother, who has the burden of demonstrating voluntary unemployment and an amount of suitable imputed income, failed to offer sufficient evidence of father's income-producing capabilities. In her objections to the magistrate's decision, mother argued that father's law license was not suspended because he only had misdemeanor convictions, and he was sentenced to community control, not jail. However, the docket mother attached to her objections to support this allegation clearly indicates father was convicted of a fifth-degree felony, meaning his license to practice law would be provisionally suspended pending a disciplinary investigation and proceeding. Gov.Bar R. V(5)(A).

{¶19} The magistrate determined that father had a decreased earning potential, and the previous level of income from his job at the prosecutor's office was no longer equitable. While several cases in Ohio have held that a criminal conviction or imprisonment is not grounds for a modification in child support, the trial court must examine the individual case and determine, in its discretion, the amount of income to impute based on the totality of the circumstances before it.

{¶20} In *Drucker*, 8th Dist. Cuyahoga No. 76139, 2000 Ohio App. LEXIS 2471 (June 8, 2000), the father was an attorney licensed to practice in Ohio who moved to Florida and did not attempt to gain a license to practice in that state. This court held, "[a]ppellant's voluntary failure to obtain a license to practice law would not support a

finding that his unemployment was involuntary." *Id.* at *6. This is distinguishable from the present situation where father's earning capabilities were significantly impacted, albeit from voluntary criminal activity. The *Drucker* court relied on the fact that "there was no medical evidence [ father] could not return to his former position as an attorney" when discussing father's allegations that he suffered from depression and substance abuse. Here, there is evidence that father could not return to his position as an attorney because of a felony conviction and license suspension.

{¶21} In *Brownlee*, 8th Dist. Cuyahoga Nos. 97037 and 97105, 2012-Ohio-1539, the trial court found that the father was not voluntarily unemployed during a time in which he was fired from his job based on criminal drug activity. The father was a doctor who became addicted to prescription medicine. As a result, he was arrested and convicted of drug-related crimes and lost his job and his license to practice medicine. The trial court did not impute income during the period of time the father was without employment citing to the laudable turnaround that the father made in treating his drug addiction, regaining his medical license, and returning to his job with his previous employer. This court affirmed the trial court's decision to not impute income to the father during the period of unemployment because it was within the trial court's discretion based on the facts of that case. *Id*. at ¶ 19.

{¶22} Here, the trial court determined, based on the evidence submitted by mother, that father did not have the ability to produce income at the level of his previous salary and had only previously earned around $13,000 per year from the practice of law outside

of this job. The court imputed income above that level based on the facts of the case before it. That was not an abuse of discretion. Mother's first assignment of error is overruled.

## B. Support and Credits for an Emancipated Child

{¶23} Mother next claims that the trial court abused its discretion in not ordering support for a child who was emancipated during the pendency of the divorce petition.

{¶24} A child may be emancipated upon the attainment of the age of majority, but the period for child support obligations is extended while the child continuously attends high school on a full-time basis. R.C. 3103.03(B); *Diamond v. Diamond*, 11th Dist. Trumbull No. 2002-T-0113, 2003-Ohio-3548, ¶ 11. The trial court found that mother failed to object to the lack of support for M.H. This was based on her Civ.R. 75(N) objections to the magistrate's temporary support order, which did not include arguments about M.H. The objections filed merely requested an oral hearing without specifying the nature of those objections. The hearing, as set forth in the magistrate's decision that resulted from those objections, related to clerical errors rather than substantive issues. According to the magistrate's decision, mother did not raise an objection to the lack of support for M.H.[3] "Failure to file objections is normally fatal to a later appeal on the same issues." *Weber v. Weber*, 9th Dist. Lorain No. 00CA007722, 2001 Ohio App. LEXIS 2290, *8 (May 23, 2001).

---

[3] M.H. was 17 at the time the temporary support order was filed and turned 18 only 20 days later.

{¶25} This conflicts with the affidavits submitted by mother. Therein, mother claims she continuously raised objections to the lack of support for M.H. The affidavits, one from her and one from her lawyer, aver that the issue of support for M.H. was raised several times before the magistrate, and the magistrate stated that the issue would be handled at the final hearing for support.

{¶26} The trial court was faced with a conflicting record regarding failure to object at the appropriate time regarding support for M.H. In such a situation, it was not an abuse of discretion for the trial court to determine that mother did not raise objections at the appropriate time and waived any claimed error.

{¶27} However, the lack of support obligations for M.H. demonstrates that the decision to credit father with certain payments made to mother prior to the final decree was an abuse of discretion. The trial court cannot provide credits toward a child support obligation for payments made on behalf of a child father was not obligated to support. The trial court can either mandate support obligations for M.H. and then give father credit for payments made on her behalf, or not mandate support obligations for M.H. and not give father credits. It cannot give father credits for support payments for a child he is not obligated by the court to support.

{¶28} The trial court determined that the documentation submitted by father established that he had made a number of payments on behalf of the children for expenses related to child care and a number of direct payments to mother for the children. Mother

argues father should not receive credit for any of these payments because they were not made through CSEA.

{¶29} Normally, these payments would be deemed a gift if there was a support order in effect at the time the payments were made. R.C. 3121.45. According to this statute, all payments made pursuant to a support order must be made through CSEA. However, as the trial court recognized, at the time many of the payments were made, there was no support order in place. Thus, father was not put on notice that all payments made prior to July 11, 2012, the date the temporary support order was issued, would be treated as a gift for which father would receive no credit against his support obligations. *See Soukup v. Kirchner*, 11th Dist. Geauga No. 2012-G-3095, 2013-Ohio-2818, ¶ 26-29. Payments made after July 11, 2012, on behalf of the children to their school or to mother directly were appropriately treated as gifts by the trial court. This was not an abuse of discretion.

{¶30} What does constitute an abuse of discretion is that father received credit for many of those payments when the record indicates they were for the support of M.H. Father never had a court-ordered obligation to support M.H. during the pendency of this case. Therefore, credit for payments for support of M.H. against father's support obligations for his two other children was inappropriate. This case must be remanded for the determination of proper credits for payments made prior to July 11, 2012, in support of father's two youngest children.

### III. Conclusion

**{¶31}** Father's ability to earn $51,000 per year working at the county prosecutor's office was eliminated by a criminal conviction. The trial court took this into consideration and examined father's previous employment history to arrive at a level of imputed income commensurate with his income levels in 2008 and 2009 — the years for which evidence existed in the record. However, the court erred when giving father credit for payments made in support of a child for whom no support order was issued. Father's support obligations related to his two youngest children only, and crediting payments made on behalf of the eldest child against the support obligations for the other two is inappropriate.

**{¶32}** This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

LARRY A. JONES, SR., J., and
TIM McCORMACK, J., CONCUR