[Cite as *Phelps v. Saffian*, 2018-Ohio-4329.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106475**

**CHRISTINE PHELPS**

PLAINTIFF-APPELLEE

vs.

**MICHAEL SAFFIAN**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART;
REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-08-322365

**BEFORE:** E.A. Gallagher, A.J., Stewart, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 25, 2018

**ATTORNEYS FOR APPELLANT**

Joyce E. Barrett
James P. Reddy, Jr.
55 Public Square, Suite 1260
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Joseph G. Stafford
Nicole A. Cruz
Stafford Law Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, Ohio 44114

**ALSO LISTED**

**GUARDIAN AD LITEM FOR R.S.**

Leigh A. Hollingsworth
P.O. Box 19040
Cleveland, Ohio 44119

**ATTORNEY FOR CHILD SUPPORT ENFORCEMENT AGENCY**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Steven W. Ritz
Assistant Prosecuting Attorney
9300 Qunicy Avenue, 4th Floor
Cleveland, Ohio    44106

EILEEN A. GALLAGHER, A.J.:

{¶1} Defendant-appellant-father Michael Saffian ("father") appeals from the trial court's order entered after remand in *Phelps v. Saffian*, 8th Dist. Cuyahoga No. 103549, 2016-Ohio-5514 ("*Phelps I*"). In *Phelps I*, father and plaintiff-appellee-mother Christine Phelps ("mother") appealed from the trial court's September 3, 2015 judgment entry ruling on various motions

related to the parties' efforts to modify father's child support obligation. Father contends that the trial court failed to correct errors this court ordered it to correct in *Phelps I* and abused its discretion by: (1) "tripling" his child support obligation, (2) ordering his increased child support obligation to be retroactive to April 2009, (3) failing to impute additional income to mother in determining the amount of child support to be awarded and (4) failing to address the attorney fees awarded to mother under R.C. 3105.73(B). He also contends that the trial court erred by holding him in contempt for failing to comply with court orders requiring him to produce financial documentation. For the reasons that follow, we affirm the trial court's judgment in part and reverse it in part. We remand the case for issuance of a new child support order in which father's modified child support obligation is imposed retroactive to August 17, 2011 and for recalculation of child support arrearages consistent with this opinion.

**Factual and Procedural Background**

{¶2} Mother and father were married in October 2002. Their daughter was born in July 2004. In December 2004, mother filed for divorce. At that time, mother and father resided with their daughter in California. In November 2006, while the parties' divorce was pending, the California court entered an interim order, ordering father to pay $1,571 in monthly child support to mother. That child support order was incorporated into the parties' November 2008 divorce decree. In April 2009, after mother, father and the child had all moved to Ohio, mother filed a motion to modify child support in the Cuyahoga County Court of Common Pleas, Domestic Relations Division asserting that circumstances had changed due to changes in the parties' incomes and daycare and health insurance costs.[1] In August 2009, father filed his own motion to modify child support.[2]

---

[1] In February 2009, mother filed a petition to register the California child support order. Although the filing was

**{¶3}** On June 10, 2015, after six days of hearings extending from November 2013 to May 2014, the magistrate issued a decision granting mother's motion to modify father's child support obligation and ordering immediate relief pursuant to Civ.R. 53(D)(4)(e)(ii). Both parties filed objections to the magistrate's decision and, on September 3, 2015, the trial court overruled the parties' objections and adopted the magistrate's decision "in its entirety." The trial court entered a new child support order, ordering father to pay $4,350 in monthly child support effective June 1, 2015. The trial court also modified father's child support obligation retroactively, ordering incremental increases in father's monthly child support obligation as follows:

- From February 5, 2009 through December 31, 2009, $3,249.57 per month,

- From January 1, 2010 through December 31, 2010, $3,911.37 per month,

- From January 1, 2011 through December 31, 2011, $3,990.67 per month,

- From January 1, 2012 through December 31, 2012, $4,290.04 per month,

- From January 1, 2013 through December 31, 2013, $4,349.54 per month and

- From January 1, 2014 forward, $4,350 per month.[3]

**{¶4}** The retroactive award resulted in child support arrearages of $191,558.74 as of May 31, 2015. The trial court ordered father to pay an additional $870 per month toward the child

---

captioned, "Plaintiff's Petition to Register a Foreign Decree and for Enforcement and Modification of Terms of that Decree Governing Support," at that time, mother requested only that the trial court "adopt" the California order and "take jurisdiction of the matter for modification and enforcement of support."

[2] In his motion to modify child support, father likewise asserted that a change in circumstances warranted modification of his monthly child support obligation but did not provide any explanation as to why modification of his child support obligation was warranted.

[3] The child support amounts set forth herein do not include the 2 percent processing fee.

support arrearages until they were paid in full and ordered that a withholding or deduction notice be issued to father's company, Anesthesia & Associates.

{¶5} The trial court also ordered father to pay 91 percent of the child's uncovered medical expenses and $38,855 towards mother's attorney fees and litigation expenses pursuant to R.C. 3105.73(B). The trial court further found father to be in contempt of court due to his repeated failures to comply with court orders to provide requested discovery. Under the trial court's order, the contempt could be purged by payment of $6,950 in attorney fees and $113.35 in litigation expenses within 45 days of journalization of the court's order.

{¶6} Both parties appealed to this court. On appeal, father claimed the amounts of child support and attorney fees awarded mother were too high; mother claimed they were too low.[4] Father also complained about delays in ruling on the parties' motions, that the trial court erred in ordering the modified child support retroactive to February 2009 and in failing to impute additional income to mother (who worked only 20 hours per week as a physician assistant) based on full-time employment. He also challenged the trial court's failure to award him the dependency exemption for the child and the trial court's contempt finding.

{¶7} Mother complained that the trial court abused its discretion in failing to order father to reimburse her for the child's school transportation expenses, to pay additional sums towards arrearages and in failing to allocate 100 percent of the costs of uncovered medical expenses to father.

{¶8} On August 25, 2016, after considering the parties' arguments and reviewing the record, this court held that the trial court had erred (1) in failing to consider whether it should

---

[4] Father argued at the hearing that there had been no change in circumstances and that modification of the child support order was not warranted. Mother requested that father's child support obligation be increased to $10,000 per month.

impute additional income to mother, (2) in holding father responsible for the child's private school tuition without considering that mother made the unilateral decision to send the child to private school in violation of a retraining order, (3) by ordering the modified child support to be retroactive to the date on which mother filed her motion to modify child support and (4) by failing to designate which parent may claim the federal income tax dependency exemption for the child. This court affirmed the trial court's decision not to require father to pay for the child's school transportation expenses and remanded the case for recalculation of child support. *Phelps I* at ¶ 3.

{¶9} This court declined to address the parties' remaining assignments of error, including the assignments of error relating to the attorney fee award, reasoning that these issues were mooted given that the trial court would need to recalculate child support on remand. *Phelps I* at ¶ 3, 63. This court indicated that the trial court was to issue a new ruling on the motions to modify child support consistent with its opinion within 60 days of the date of its decision. *Phelps I* at ¶ 68. Mother filed a motion for reconsideration and for en banc consideration of the court's decision. Both were denied.

{¶10} On August 30, 2016, father filed a combined motion with the trial court to: (1) suspend the current support order, (2) suspend the current income source order on Anesthesia & Associates, (3) instruct the Child Support Enforcement Agency to suspend collection and disbursement of child support payments and (4) order mother to reimburse father for overpayment of child support and attorney fees. Specifically, father sought to recover $54,735 for 15 months of "excess" child support payments and $38,855 in mother's attorney fees he had paid pursuant to the trial court's original judgment entry.

**{¶11}** In November 2016, father submitted a "proposed remand judgment entry" and filed a motion requesting that the trial court adopt his proposed judgment entry, asserting that the 60-day deadline that had been set in *Phelps I* for the trial court to issue a new ruling on the motions to modify child support had passed.    Mother opposed the motion.

**{¶12}** In December 2016, mother appealed this court's decision in *Phelps I* to the Ohio Supreme Court.    That court declined to accept jurisdiction.    *Phelps v. Saffian*, 149 Ohio St.3d 1433, 2017-Ohio-4396, 76 N.E.3d 1208 (June 21, 2017).

**{¶13}** In October 2017, on remand, the trial court issued a new judgment entry.    The trial court found that, based on increases in the parties' income, "a substantial, 'significant' and 'material' change in circumstances occurred" that warranted modification of the existing child support order.    The trial court once again ordered retroactive, incremental increases in father's child support obligation as follows:

- From April 2, 2009 through December 31, 2009, $3,250 per month,

- For 2010 and 2011, $3,900 per month and

- From January 1, 2012 forward, $4,350 per month.

The retroactive award resulted in child support arrearages of $182,028.44 as of May 31, 2015.

**{¶14}** Father appealed, raising the following seven assignments of error for review:

FIRST ASSIGNMENT OF ERROR
The trial court erred and abused its discretion in failing to adhere to the mandate of the Eighth Appellate District in the prior appeal in Case No. CA-15-103549.

SECOND ASSIGNMENT OF ERROR
The trial court erred and abused its discretion in overruling the appellant's motion to adopt defendant's proposed remand judgment entry filed on November 8, 2016.


THIRD ASSIGNMENT OF ERROR

The trial court erred and abused its discretion in overruling the appellant's motion to terminate child support and motion to suspend the current child support order, the current income source order upon Anesthesia & Associates, to instruct CSEA to suspend collection and disbursement of child support payments, and to order petitioner to reimburse defendant for overpayments of child support and attorney fees filed on August 30, 2016.

FOURTH ASSIGNMENT OF ERROR
The trial court erred and abused its discretion in increasing appellant's child support obligation.

FIFTH ASSIGNMENT OF ERROR
The trial court erred and abused its discretion in making the increase in appellant's child support obligation retroactive to more than six years prior to its increased order.

SIXTH ASSIGNMENT OF ERROR
The trial court erred and abused its discretion in failing to impute income to the appellee.

SEVENTH ASSIGNMENT OF ERROR
The trial court erred and abused its discretion in finding appellant in contempt of court and awarding appellee attorney fees.

{¶15} A number of father's assignments of error overlap.  For ease of discussion, we address father's assignments of error out of order and together where appropriate.

**Law and Analysis**

**Modification of Father's Child Support Obligation**

{¶16} Father's first, fourth, fifth and sixth assignments relate to the modification of his child support obligation.   In his first and sixth assignments of error, father argues that the trial court ignored this court's mandate in     *Phelps I* and abused its discretion by refusing to impute additional income to mother — representing the income she would have earned if she had been employed full time as a physician assistant, rather than part time — when calculating the parties' child support obligations.   In his first and fourth assignments of error, father challenges the amount of his modified child support obligation.   In his first and fifth assignments of error,

father contends that the trial court erred and abused its discretion in ordering his modified child support obligation retroactive to April 2009.

{¶17} A trial court's modification of a prior child support order is within its broad discretion and will not be disturbed absent an abuse of discretion. *Morrow v. Becker,* 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 9 ("Matters involving child support are reviewed under an abuse-of-discretion standard."). A trial court abuses its discretion if its decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶18} Where, as here, the parents have a combined gross income exceeding $150,000, the standard child support guidelines do not apply, and R.C. 3119.04 requires the court to determine the amount of child support to be awarded on a case-by-case basis, taking into account "the needs and the standard of living of the children who are the subject of the child support order and the parents." R.C. 3119.04(B); *Phelps I* at ¶ 15 (When the parties' combined gross income exceeds $150,000, child support must be determined in accordance with R.C. 3119.04, and the child support guidelines set forth in R.C. 3119.02 do not apply except to "[set] a floor beneath which support ordered under R.C. 3119.04(B) cannot fall."), citing *Siebert v. Tavarez*, 8th Dist. Cuyahoga No. 88310, 2007-Ohio-2643, ¶ 31; *Brownlee v. Brownlee*, 8th Dist. Cuyahoga Nos. 97037 & 97105, 2012-Ohio-1539, ¶ 26 (Under R.C. 3119.04(B), the amount of child support to be awarded is to be determined by the trial court on a case-by-case basis and is left "'entirely to the court's discretion.'"), quoting *Cyr v. Cyr*, 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504, ¶ 54. The trial court is not required to make any specific findings or to provide any explanation for its child support award unless it awards less than the amount calculated for combined gross incomes of $150,000. *Brownlee* at ¶ 26; *Cyr* at ¶ 56.

**{¶19}** The statute is silent as to what constitutes a sufficient change in circumstances to warrant modification of a child support order where the parties to a child support order collectively earn more than $150,000. In *Phelps I* this court held that modification of such child support orders is governed by the "general terms of R.C. 3119.79" and that a child support order is properly modified only if there has been a "substantial" change in circumstances from the original support order. *Phelps I* at ¶ 11-13, 17, 20-22.

**{¶20}** Recognizing that incremental changes in income for high income parents are not, in and of themselves, substantial changes in circumstances, in *Phelps I* this court identified "several considerations" that "guide the courts" in determining what constitutes a substantial change of circumstances for high income parents. These considerations include: (1) the needs and the standard of living of the child and the parents — specifically, how the child would have lived had the parents remained together; (2) giving meaning to the word "substantial" by requiring evidence of a "drastic," "material" or "significant" change to avoid "endless motions for modification based on incremental changes in income"; (3) ensuring that the substantial change in circumstances was not contemplated at the time of the original support order and (4) avoiding orders that operate as "de facto spousal support," i.e., that modify child support solely to offer the obligee parent a better standard of living. *Phelps I* at ¶ 16-23; *see also Bohme v. Bohme*, 2d Dist. Montgomery No. 27258, 2017-Ohio-1190, ¶ 10 ("R.C. 3119.04(B) does not address what constitutes a substantial change of circumstances, but the needs of the child and the standard of living he or she has enjoyed are relevant factors, as in the initial determination of child support under R.C. 3119.04(B); the public policy interest reflected in the 'substantial' change test of R.C. 3119.79(A) and (C), which is intended to prevent endless motions for modification based on incremental changes in income, is also relevant.").

**Failure to Impute Additional Income to Mother**

{¶21} Pursuant to R.C. 3119.01(C)(5)(b) and(11)(a), "income" for purposes of calculating child support includes the potential income that may be imputed to a parent who is found to be voluntarily unemployed or underemployed. In determining whether an individual is voluntarily underemployed, "'[t]he test is not only whether the [underemployment] was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned.'" *Hurley v. Austin*, 8th Dist. Cuyahoga No. 99992, 2013-Ohio-5592, ¶ 14, quoting *Woloch v. Foster*, 98 Ohio App.3d 806, 811, 649 N.E.2d 918 (2d Dist.1994). Whether a parent is voluntarily underemployed and the amount of any income to be imputed to the parent are matters to be determined by the trial court based on the particular facts and circumstances of each case. *Rock v. Cabral*, 67 Ohio St.3d 108, 615N.E.2d 218 (1993), syllabus. A parent claiming that the other parent is voluntarily underemployed has the burden of proof on the issue. *Hurley* at ¶ 14, citing *Fischer v. Fischer*, 2d Dist. Clark No. 11 CA 81, 2012-Ohio-2102, ¶ 24, and *King v. King*, 4th Dist. Jackson No. 12CA2, 2013-Ohio-3426, ¶ 21.

{¶22} In *Phelps I*, this court found that "[t]he magistrate acted unreasonably by making factual findings that were inherently contradictory with regard to why mother only worked part time hours" because it found both that (1) mother's part-time work hours were "what was available from her employer" and (2) mother did not work full time because (a) she would need more daycare, (b) part-time employment allowed her to spend more quality time with the child and (c) she had not asked to work more hours or inquired into transferring into other units where more hours might be available. *Phelps I* at ¶ 43-44. This court further noted that the magistrate "gave no consideration to whether [mother] had the ability to work more hours and whether

potential income should be imputed to her." *Id.* at ¶ 44. This court held that "[w]hile the [trial] court had broad discretion to fashion a child support ordered, it erred by upholding a magistrate's decision that failed to consider [mother's] potential income for purposes of establishing child support." *Id.* As such, this court directed the trial court to consider the issue of whether additional income should be imputed to mother on remand. *Id.* at ¶ 3, 44. It, did not, however, mandate that the trial court impute additional income to mother (and reduce father's child support obligation accordingly) when calculating the parties' child support obligations.

{¶23} The record reflects that on remand, the trial court expressly considered whether additional income should be imputed to mother. The trial court considered each of the relevant criteria under R.C. 3119.01(C)(11)(a) and determined that father had not met his burden of showing that mother was voluntarily underemployed or the amount of any additional income to be imputed to mother. The trial court noted that father did not present any evidence with respect to the availability of other employment or prevailing wages and salary levels in the relevant geographic area and found that mother's work schedule had allowed her to assist the child with her school work and "spend quality time" with the child. The trial court further indicated that even if more income were attributed to mother by imputation, it would not change "the ultimate amount of support," given that the amount of support in cases involving combined gross incomes over $150,000 is determined on a case-by-case basis. On the record before us, we cannot say that the trial court abused its discretion in refusing to impute additional income to mother. Accordingly, we overrule father's sixth assignment of error.

### Amount of Father's Modified Child Support Obligation

{¶24} Father also contends that the trial court abused its discretion in increasing his child support obligation. He argues that the evidence presented at the hearing was "insufficient to

warrant the child support modification ordered by the court" and that the trial court's modified child support award constitutes unlawful, "hidden spousal support." He contends that the original child support amount was sufficient to cover the child's needs and lifestyle and that mother has shown "no reason to deviate" from the basic monthly child support obligation calculated for a combined gross income of $150,000 because the child participated in only "routine" extracurricular activities, had no special needs and mother had been able to provide a home for the child and pay for the child's private school tuition, extracurricular activities and other expenses using the child support she had previously received. He also complains that the trial court's modified child support amounts for each year "lack mathematical justification" because none of the child support worksheets attached to the trial court's judgment entry "reference[s]" the trial court's modified child support amounts and the trial court otherwise "provides no explanation or reasoning" for its determination of the "final child support obligation for each year."[5]

{¶25} Following a thorough review of the record, we find no abuse of discretion by the trial court in concluding that a substantial change of circumstances occurred that warranted modification of father's child support obligation in this case. Likewise, we cannot say that the trial court abused its discretion in increasing father's monthly child support obligation to $4,350.

{¶26} In *Phelps I*, this court stated that nothing in its decision "should be construed to suggest that modification of child support was unwarranted in this case" and that "[father's] increased income alone warranted modification so that the child could enjoy a lifestyle consistent

---

[5] Father also argues that, pursuant to R.C. 3119.79, the trial court had no authority to modify his child support obligation for 2009 and 2010 because his share of the basic combined child support obligation calculated under the basic child support schedule and worksheet for a combined gross income of $150,000 was not ten percent greater than the then-existing child support order. We need not address that issue here because, as discussed *infra*, we find that the trial court abused its discretion in ordering retroactive modified child support prior to August 17, 2011.

with the one she would have had had the parents not divorced." *Phelps I* at ¶ 52. However, the court indicated that many of the magistrate's findings "suggested that [father] had an obligation to raise [mother's] standard of living." *Id.* at ¶ 51. Accordingly, it stated that the trial court "must carefully distinguish the child's need for support from [mother's] personal needs when considering modification of child support" on remand. *Id.*

{¶27} The trial court found that at the time the original child support order was entered, mother had $12,000 in annual net income and father had $87,420 in annual net income. By 2009, mother's annual gross income was $42,606 and father's annual gross income was $368,676. By 2013, mother's annual gross income was $53,816 and father's annual gross income was over $544,000.

{¶28} On remand, the trial court used the child support worksheets to determine what father's monthly child support obligation would be each year for the years 2009 to 2013, under the child support guidelines for a combined gross income of $150,000. See R.C. 3119.04(B). The trial court reasoned that "[t]o have only determined the obligation for 2009, the year the motion was filed, after a six year delay in bringing the motions to trial, would not have been equitable to the parties or judicially economical." It attached those worksheets to its judgment entry. Those figures (excluding processing fees) were as follows: for 2009, $1,538.64; for 2010, $1,600.61; for 2011, $1,736.63; for 2012, $1,797.21 and for 2013, $1,804.47.

{¶29} The record reflects that the trial court then gave appropriate consideration to how the child would have lived had her parents remained together, taking into account the needs and lifestyle of the child and parents and each of the "several considerations that guide the courts" in determining what constitutes a substantial change of circumstances for high income parents. *Phelps I* at ¶ 16-23.

**{¶30}** It is not the standard of living that the child had at the time the original child support order was entered that determines the appropriate amount of child support to be awarded. Rather, a child of divorced parents has the right to the same standard of living he or she would have enjoyed if his or her parents were still married. As the court cautioned in *Phelps I*, however, it is the how the child *would* have lived, not how the child *could* have lived that is determinative. *Phelps I* at ¶ 19. A change in the income of very high income parents does not, standing alone, constitute a substantial change in circumstances because it does not necessarily affect a child's needs or lifestyle. *Id.* at ¶ 16.

**{¶31}** In this case, given the significant increases in her parents' income between the time the initial child support order was entered and the time of the hearing on mother's motion to modify child support, it is reasonable to expect that the child's standard of living would have increased as well had her parents remained married. *See, e.g., Basista v. Basista,* 6th Dist. Wood No. WD-14-076, 2016-Ohio-146, ¶ 41, 44 (trial court abused its discretion in finding that it was reasonable to maintain the same total child support obligation when father's income was significantly higher than it was at the time marriage ended; father's children should be able to benefit from his increased income after divorce in the same way they would have if marriage had continued).

**{¶32}** There is no ready means of determining the standard of living the child would have enjoyed had her parents remained married. Likewise, finding the right balance between ensuring that a child is provided the standard of living he or she would have enjoyed had the parents remained married while avoiding an award that amounts to "de facto spousal support" is not an easy task — particularly, where, as here, a custodial parent makes intangible contributions on behalf of the child that may adversely affect his or her standard of living. *See Siebert*,

2007-Ohio-2643, at ¶ 36-37 (noting that where intangible contributions made by the custodial parent adversely affect that parent's standard of living, "the court should ensure that these intangible contributions are financially offset by the obligor parent," but that "[t]he line between offsetting contributions made by a custodial parents and avoiding ordering de facto spousal support may sometimes not be clearly defined"). "In such cases, the [trial] court's discretion must guide its judgment." *Siebert* at ¶ 37.

{¶33} The fact, as father asserted, that mother had been able to "make do," paying only $500 for rent and using her earnings and savings to pay for the child's expenses when receiving the original child support amount, is not determinative. Likewise, the possibility, as mother asserted, that father "won't feel" an increase in his child support obligation, is not the standard.

{¶34} There is no requirement in this case that the trial court provide a "mathematical justification" as to why it ordered a particular sum as child support. The record reflects that the trial court carefully considered both (1) the needs, income, expenses, intangible contributions and standard of living of each parent and (2) the needs, expenses and standard of living of the child in determining an appropriate modified child support amount. The trial court found that mother provides health insurance for the child, pays work-related child care expenses for the child and pays for the child's private school tuition, additional tutoring and extracurricular activities — all of which it reasonably determined were consistent with the lifestyle the child would have enjoyed had her parents not divorced. The trial court further found that mother's part-time work schedule has allowed mother to assist the child with her school work and to spend additional "quality time" with her and that the child lives a majority of the time with mother in "sub-standard rental housing, prone to flooding" while father "enjoys a very comfortable home and lifestyle." The trial court indicated that mother wanted to provide better housing and

clothing for the child and reasonably determined that this was consistent with the lifestyle the child would have enjoyed had her parents not divorced. The trial court's findings are supported by competent, credible evidence in the record.

**{¶35}** On the record before us, the trial court's decision to increase father's monthly child support obligation to $4,350 was not unreasonable, arbitrary or unconscionable. Father's fourth assignment of error is meritless.

### Giving Retroactive Effect to Father's Modified Child Support Obligation

**{¶36}** Although the trial court did not abuse its discretion in increasing father's monthly child support obligation to $4,350, we find that the trial court did abuse its discretion in ordering father's modified child support obligation retroactive to April 2009.

**{¶37}** As a general rule, because of the time it takes to modify child support orders, an order modifying child support order may be made retroactive to the date the motion to modify child support was filed unless special circumstances dictate otherwise. *See, e.g., Oatey v. Oatey*, 8th Dist. Cuyahoga Nos. 67809 & 67973, 1996 Ohio App. LEXIS 1685, 41; *Winn v. Wilson*, 12th Dist. Butler No. CA2017-04-052, 2018-Ohio-1010, ¶ 39; *K.S. v. K.B.*, 6th Dist. Fulton No. F-17-005, 2017-Ohio-7103, ¶ 6. In this case, such special circumstances existed.

**{¶38}** In *Phelps I*, this court held that it was "inequitable for the [trial] court to order modification of child support obligation retroactive to the date on which [mother] filed her motion to modify" child support because the length of the delay allowed the court to order modification of father's child support obligation based on (1) father's income "in the most current years and not on his income at the time the motion was filed" and (2) "significant expenses" mother had incurred long after her motion was filed. *Phelps I* at ¶ 57-58. This court noted that it took the trial court six years to issue a decision on mother's motion, that the case

was in "judicial limbo" (through no fault of the parties) for at least two of those years due to an issue involving the court's jurisdiction and that, even after the jurisdictional issue was resolved, the case moved at a snail's pace due, in part, to judicial "time constraints." *Id.* at ¶ 55.

{¶39} This court also questioned "how it could be equitable" to retroactively modify the California child support order (from which mother did not appeal) given that it had only been in place for a short time and found that the trial court had erred "by holding [father] responsible for the child's private school tuition without considering that [mother] made the unilateral decision to send the child to private school and did so in violation of a restraining order prohibiting her from doing so." *Id.* at ¶ 3, 47, 59. It directed the trial court to correct these errors on remand. *Id.* at ¶ 3, 60.

{¶40} The record reflects that, on remand, the trial court considered the impact of the lengthy delays,[6] the timing of mother's motion to modify child support in relation to the initial child support order incorporated in the parties' divorce decree and the facts and circumstances surrounding the child's transfer to private school and the income when determining the amount of father's modified child support obligation. However, the trial court nevertheless, ordered father to pay modified child support retroactive to when mother filed her motion to modify child support — which this court had previously stated was "inequitable" and error. *Phelps I* at ¶ 3, 57. Thus, the trial court abused its discretion in ordering the modified child support retroactive to April 2009 on remand. *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984)*,* syllabus

---

[6] In addition to the delays caused by resolution of the jurisdictional issue and other judicial delays, the trial court found that both parties were responsible, at least in part, for fourteen months' delay from February 2012 to April 2013 (after the juvenile court ordered the case returned to the domestic relations court) when no one inquired as to when the motion to modify support would be scheduled for hearing. The trial court found that other delays were attributable to father's failure to timely comply with discovery requests after the case was returned to the docket of the domestic relations court.

(an inferior court generally has "no discretion to disregard the mandate of a superior court in a prior appeal in the same case").

**{¶41}** When mother filed her motion to modify child support in April 2009, the child was four-and-one-half years old and not yet attending school. At that time, mother asserted that an increase in child support was warranted due to changes in the parties' incomes and daycare and health insurance costs. The record reflects that as of the time of the hearing (in 2013-2014 when the child was 9), mother's most significant child-related expenses and the primary basis for her seeking an increase in child support were the costs associated with sending the child to private school.

**{¶42}** On remand, the trial court found that the child attended public school through the 2010-2011 school year and first began attending private school on August 17, 2011 for the 2011-2012 school year. The parties have not challenged these findings. Under the particular facts and circumstances of this case, we find it would be equitable and in the best interest of the child for father to pay modified child support retroactive to August 17, 2011, the date the child first attended private school. Father's fifth assignment of error is sustained in part and overruled in part. Accordingly, we reverse the trial court's judgment to the extent it imposes father's modified child support obligation retroactive to April 2009 and remand the case for issuance of a new child support order that imposes father's modified child support obligation retroactive to August 17, 2011.

### Attorney Fee Award Under R.C. 3105.73(B)

**{¶43}** In his seventh assignment of error, father challenges the trial court's order to pay $38,855 of mother's attorney fees pursuant to R.C. 3105.73(B). Pursuant to R.C. 3105.73(B), "[i]n any post-decree motion or proceeding that arises out of an action for divorce," a trial court

"may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In determining whether such an award is equitable, the trial court "may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." R.C. 3105.73(B). The court may make an award of attorney fees and litigation expenses under R.C. 3105.73(B) in addition to making an award of attorney fees and litigation expenses under any other provision of the code or civil rules. R.C. 3105.73(C).

{¶44} Father contends that it was inequitable for the trial court to order him to pay any of mother's attorney fees because many of the delays in the litigation were attributable to the jurisdictional issue that resulted in the transfer of the case to juvenile court and then back to domestic relations court, and to mother's conduct, including ten motions for continuance she filed between June 2009 and February 2014. He also challenges the evidence mother submitted to support her request for attorney fees, asserting that certain of the fees were unreasonable, including fees charged for several instances in which two attorneys appeared on mother's behalf at deposition or trial, and contends that mother failed to comply with Loc.R. 21(B) of the Court of Common Pleas of Cuyahoga County, Domestic Relations Division ("Loc.R. 21(B)").

{¶45} Whether to award attorney fees under R.C. 3105.73(B) is within the sound discretion of the trial court. *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 102409, 2015-Ohio-3238,¶ 70 ("A court's decision on a request for attorney fees will not be overruled unless there is 'no sound reasoning process that would support that decision.'"), quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶46} Loc.R. 21(B) provides:

Evidence in Support of Motion. At the time of the final hearing on the motion or pleading that gives rise to the request for attorney fees, the attorney seeking such fees shall present:

(1) An itemized statement describing the services rendered, the time for such services, and the requested hourly rate for in-court time and out-of-court time;

(2) Testimony as to whether the case was complicated by any or all of the following:

(a) new or unique issues of law;
(b) difficulty in ascertaining or valuing the parties' assets;
(c) problems with completing discovery;
(d) any other factor necessitating extra time being spent on the case;

(3) Testimony regarding the attorney's years in practice and experience in domestic relations cases; and

(4) Evidence of the parties' respective income and expenses, if not otherwise disclosed during the hearing.

**{¶47}** "'Where the amount of an attorney's time and work is evident to the trier of fact, an award of attorney fees * * * is not an abuse of discretion,'" even in the absence of "'specific evidence'" to support the amount awarded. *Rodgers v. Rodgers*, 8th Dist. Cuyahoga No. 105095, 2017-Ohio-7886, ¶ 70, quoting *Dotts v. Schaefer*, 5th Dist. Tuscarawas No. 2014 AP 06 0022, 2015-Ohio-782, ¶ 17. "[D]omestic relations courts often rely on their own knowledge and experience to determine the reasonableness of attorney fees." *Rodgers* at ¶ 70.

**{¶48}** Mother requested over $94,000 in attorney fees and litigation expenses from May 2009 to May 2014 related to her motion to modify child support. In support of her request, mother's counsel submitted itemized billing statements detailing the work performed, and Attorney Joseph Stafford testified in narrative form at the hearing regarding mother's attorney fees and litigation expenses. Although father complains that no evidence was presented regarding the "various attorneys' years in practice and experience in domestic relations matters," father's counsel stipulated to Attorney Stafford's qualifications at the hearing. Attorney

Stafford testified that he began representing mother in 2009, taking over the case from prior counsel. He testified that he handled "all aspects of the case" and described the work he and his associates and legal assistants performed on the case, including the jurisdictional issue that arose in the case and the difficulties in obtaining financial documentation from father to determine father's income. He testified as to his hourly rate and that of his associates, identified tasks performed for which he did not charge the client and stated that all of the work performed was "reasonable and necessary." We find that the evidence presented was sufficient to comply with Loc.R. 21(B).

{¶49} Although father asserts that mother's counsel's billing statement include various charges for a law clerk "to carry files," Attorney Stafford disputed this claim and testified that his law clerk assisted him at the hearing, including by taking notes. Likewise, although father asserts that the billing statements "contain[] many charges for services with no reference to any individual who may have done the work," Attorney Stafford testified that this was due to a change in how time entries were recorded over the years and that any time entries that were not specifically attributed to another timekeeper related to legal services he performed personally.

{¶50} In considering mother's request for attorney fees, the trial court found that an award of $38,855 in attorney fees was both reasonable and equitable under R.C. 3105.73(B) due to the disparity in the parties' income and the fact that some — but not all — of the delays in the case were attributable to father and his "continued refusal to provide * * * legitimately requested discovery." The sum awarded by the trial court was a little more than 40 percent of the fees requested by mother. The time mother's attorneys spent attempting to obtain financial information and documents from father is well-documented in the record. The trial court's decision to award mother $38,855 toward her attorney fees was within its discretion.

**Contempt Order**

{¶51} Father also challenges the trial court's contempt finding and order requiring him to pay $6,950 in attorney fees and $113.35 in litigation expenses to mother's counsel to purge the contempt.

{¶52} Contempt is "a disregard of, or disobedience to, an order or command of judicial authority." *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 96910, 2012-Ohio-808, ¶ 26, citing *State v. Flinn*, 7 Ohio App.3d 294, 455 N.E.2d 691 (9th Dist.1982). Disobedience of a lawful court order is punishable as contempt. *See* R.C. 2705.02(A). Proof of a purposeful, willful or intentional violation of a court order is not a prerequisite to a finding of contempt. *Collins v. Collins*, 8th Dist. Cuyahoga No. 105945, 2018-Ohio-1512, ¶ 26, citing *Pugh v. Pugh*, 15 Ohio St.3d 136, 142, 472 N.E.2d 1085 (1984).

{¶53} Civil contempt must be established by clear and convincing evidence, i.e., the trier of fact must have a firm conviction or belief that the facts alleged are true. *Hissa v. Hissa*, 8th Dist. Cuyahoga Nos. 99498 & 100229, 2014-Ohio-1508, ¶ 19, citing *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972, ¶ 9; *In re Contempt of Tracy Digney*, 2015-Ohio-4278, 45 N.E.3d 650, ¶ 8 (8th Dist.). We review a civil contempt finding under an abuse of discretion standard. *Hissa* at ¶ 21; *Kapadia* at ¶ 26.

{¶54} Father contends that the trial court abused its discretion in holding him in contempt and ordering him to pay mother's attorney fees because (1) he testified that compliance with mother's document requests was an "impossibility" given that "most of the documents requested" were not in his possession or under his control, but rather, in the possession of his brother (who managed the real property and partnerships in which father had an ownership interest) or his accountant — both of whom were out of state; (2) mother should have been

required to seek the documents she was requesting by subpoena or depositions of his brother and accountant and (3) he had already produced documents "sufficient for verification of his income" for the relevant years by producing copies of his tax returns, W-2s, K-1s and bank account information.

{¶55} In this case, the trial court's finding of contempt was not an abuse of discretion. Civ.R. 26 and 34 require the timely production of requested documents that are (1) relevant to the subject matter of the pending action or reasonably calculated to lead to the discovery of admissible evidence and (2) in the "possession, custody or control" of the party from which they are sought. In addition to the income he earns as an anesthesiologist, the record reflects that father has ownership interests in numerous real estate holdings, businesses and partnerships. Information and documentation relating to those interests are relevant to a determination of father's income for child support purposes. *See, e.g.,* R.C. 3119.01(C); *see also Radford v. Radford*, 8th Dist. Cuyahoga Nos. 96267 & 96445, 2011-Ohio-6263, ¶ 27-28; *Offenberg v. Offenberg*, 8th Dist. Cuyahoga Nos. 78885, 78886, 79425 and 79426, 2003-Ohio-269, ¶ 20-30.

{¶56} The magistrate found father to be in contempt of court due to his repeated wilful failures to comply with court orders to provide requested financial documentation. As the magistrate stated in his decision:

> Defendant was questioned [at the hearing in November 2013] as to his awareness of the prior court orders to provide the discovery requests [sic]. He acknowledged that he was aware of the orders. The Defendant acknowledged that he still had not complied with all of the discovery requests. He claimed that he either did not have access to the documents, or that his brother and business partner refused to provide him the documents, or his accountant did not send him the documents (which he later admitted that he never requested same from his accountant) or that the records were stored at his cabin located on the west coast. He admitted that he spent two (2) weeks at the cabin in August 2013, on vacation and did not retrieve the records nor did he stop and see his accountant while he was there. In listening to Defendant's testimony in this regard, he was often evasive, non-responsive and not credible. Not only at this hearing, but at the

subsequent hearing dates after reviewing the business and partnership tax returns subsequently provided, there were continued determinations of additional partnership/business and real estate holdings in which the defendant owned an interest * * * which were not disclosed to Plaintiff's counsel although requested in discovery. It became clear to this Magistrate that the Defendant continually obstructed and willfully evaded providing the requested discovery in this action.

{¶57} In overruling father's objections to the magistrate's decision related to the contempt finding, the trial court further found:

The Magistrate did not err nor abuse his discretion in finding Defendant in contempt of court and awarding Plaintiff attorney fees. Throughout Defendant's testimony, he acknowledged his awareness of the prior court orders to provide discovery requests. He also affirmed that at the time of trial he had not complied with all of the discovery requests. He failed to convince the Magistrate of a valid reason as to why he was non-compliant with the orders and requests. Defendant's testimony illustrated to the Magistrate that Defendant "continually obstructed and willfully evaded" the orders of this Court. This testimony was enough to provide clear and convincing evidence that the civil contempt was supported pursuant to *Ockunzzi v. Ockunzzi* No.: 86785, 2006-Ohio-5741 (8th Dist, Ct. App., Cuyahoga, County 11-2-06).

The evidence in the record — most notably, father's own testimony — clearly and convincingly supports these findings.

{¶58} The record is replete with evidence of father's knowing, repeated failures to comply with court orders to produce financial documentation in this case. Although inability to comply with a court order is a defense in a contempt proceeding, the burden of proving inability to comply is on the party subject to the contempt charge. *See, e.g., Briggs v. Moelich*, 8th Dist Cuyahoga No. 97001, 2012-Ohio-1049, ¶ 15 ("A party must take all reasonable steps within her

power to comply with the court's order and, when raising the defense of impossibility, must show 'categorically and in detail' why she is unable to comply with the court's order."), quoting *Lahoud v. Tri-Monex, Inc.*, 8th Dist. Cuyahoga No. 96118, 2011-Ohio-4120, ¶ 54; *see also Bouillon v. Bouillon*, 3d Dist. Seneca Nos. 13-14-33 & 13-15-02, 2015-Ohio-2886, ¶ 36, citing *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 20 (2012).

{¶59} Father did not meet his burden in this case.  Both the magistrate and trial judge acted reasonably in rejecting father's claims that it was "impossible" for him to comply with the court's orders because he did not have possession or control of financial documents he had been ordered to produce.

{¶60} The attorney fees and litigation expenses, which the trial court ordered father to pay to purge the contempt, were reasonable and directly related to mother's counsel's motions to compel discovery, motions to show cause and services at the hearing regarding father's failure to comply with the court orders.   Accordingly, father's seventh assignment of error is overruled.

**Motions Father Filed After Remand**

{¶61} In light of our rulings on father's other assignments of error, we sustain his first assignment of error in part and overrule it in part and we overrule his second and third assignments of error.

{¶62} Judgment affirmed in part, reversed in part.   Case remanded for (1) issuance of a new child support order that imposes father's monthly modified child support obligation retroactive to August 17, 2011 —  i.e., from August 17, 2011 through December 31, 2011, father is to pay $3,900 per month in child support and from January 1, 2012 forward, father is to pay $4,350 per month in child support — and (2) recalculation of child support arrearages

consistent with this opinion. The new child support order is to be issued within 60 days of the date this decision is journalized.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

MELODY J. STEWART, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN PART AND DISSENTS IN PART

SEAN C. GALLAGHER, J., CONCURRING IN PART AND DISSENTING IN PART:

**{¶63}** I concur with the majority opinion, except with respect to its decision to change the retroactive date for child support from April 2009 to July 17, 2011. Because I do not believe there was any abuse of discretion by the trial court, I would affirm the entire trial court's decision.

**{¶64}** Although this divorce case originated in California, the divorce decree was registered in Ohio in February 2009 and was followed by the filing of mother's motion to modify child support in April 2009. After the motion to modify was filed, it was six years before the matter was heard and decided in 2015.

**{¶65}** The 2008 divorce decree ordered father to pay $1,571 in monthly child support. At the time the original child support order was entered, mother had $12,000 in annual net income and father had $87,420 in annual net income. The record shows that father's income increased in 2009 to $368,676 and by 2013 to $544,000. Mother's income also increased in 2009 to $42,606 and by 2013 to $53,816. Also, by the time of the 2015 hearing, the child was attending a private school.

**{¶66}** The magistrate granted mother's motion to modify child support, and the trial court overruled objections and adopted the magistrate's decision. The trial court modified father's child support obligation retroactively, ordering incremental increases in father's child support obligation beginning on February 5, 2009.

**{¶67}** Upon the initial appeal in *Phelps v. Saffian*, 8th Dist. Cuyahoga No. 103549, 2016-Ohio-5514 ("*Phelps I*"), errors were found in the trial court's determination of the modification of child support and the case was remanded with a mandate for the trial court to issue a new ruling on the motions to modify child support. *Id*. at ¶ 68. As stated in *Phelps I*, "Nothing we have said here should be construed to suggest that modification of child support was unwarranted in this case. Saffian's increased income alone warranted modification so that the child could enjoy a lifestyle consistent with the one she would have enjoyed had the parents not divorced." *Phelps I* at ¶ 52.

**{¶68}** Upon remand, the trial court issued a new ruling and found that, based on increases in the parties' income, a substantial, significant, and material change in circumstances occurred that warranted modification of the existing child support order. The court once again ordered retroactive incremental increases in father's child support obligation beginning with $3,250 per month from April 2, 2009, to December 31, 2009; $3,900 per month for 2010 and 2011; and

$4,350 per month from January 1, 2012, forward. The court also ordered father to pay a child-support arrearage, found father in contempt for failing to comply with discovery orders, and awarded mother attorney fees.

{¶69} I respectfully disagree with the majority's reasoning in changing the retroactive date for child support modification to August 17, 2011, which is associated with the date the child first attended private school. The majority acknowledges that mother's motion to modify was premised on changes in the parents' income and daycare and health insurance costs. The majority then states mother's primary basis for seeking modification at the time of the hearing was the expense of providing for a private school education. However, I believe the trial court was well within its discretion to award an incremental modification of child support reflective of the increased standard of living the child would have had since 2009 if the parents remained together.

{¶70} Generally, absent special circumstances, an order of the court modifying child support should be retroactive to the date the motion for modification was filed. *Baxter v. Thomas*, 8th Dist. Cuyahoga No. 101186, 2015-Ohio-2148, ¶ 36, citing *In re P.J.H.*, 196 Ohio App.3d 122, 2011-Ohio-5970, 962 N.E.2d 389, ¶ 12 (2d Dist.); *State ex rel. Draiss v. Draiss*, 70 Ohio App.3d 418, 421, 591 N.E.2d 354 (9th Dist.1990); and *Murphy v. Murphy*, 13 Ohio App.3d 388, 389, 469 N.E.2d 564 (10th Dist.1984). Indeed, "[a]ny other holding might produce an inequitable result in view of the substantial time it frequently takes the trial court to dispose of motions to modify child support obligations." *Murphy* at 389. As stated by the trial court, "the best interest of the minor child should not be impacted as a result of the delay in ruling on the motion to modify support."

{¶71} The majority concludes that *Phelps I* precluded the trial court from ordering the

modification of child support retroactive to the date the motion was filed. In *Phelps I*, the panel questioned "how the magistrate could have determined that it would be equitable to retroactively modify a California child support order that had been in place for only a few months" at the time the motion to modify was filed. *Id*. at 59. The panel recognized the lengthy delay in ruling on the motion and found it was inequitable to order a modification retroactive to the date the motion was filed "because the length of the delay allowed the court to order modification of child support based on Saffian's income in the most current years and not on his income at the time the motion was filed." *Id*. at ¶ 57. Thus, in *Phelps I*, there was a factual concern to which the law of the case doctrine has no application. *See Orrville Prods. v. MPI*, 8th Dist. Cuyahoga No. 65184, 1994 Ohio App. LEXIS 2512, 10 (June 9, 1994). ("[T]he doctrine of law of the case applies only to legal questions and has no application to 'findings' by the appellate court with respect to factual issues not determined by the decision of the trial court.").

{¶72} As clarified in the trial court's decision on remand, by April 2009, when mother's motion to modify was filed, there had been a significant change in father's income. The trial court observed that the original child support order was based upon the 2006 incomes of the parties, because the California court had incorporated a November 15, 2006 temporary child support order into the original child support order. The court reviewed the increases in mother's income from 2009 to 2015 and the "significant increases" in father's income and found "a substantial, 'significant' and 'material' change in circumstances occurred * * * which warrants the modification of the existing child support order." The trial court increased father's child support obligation "based on changes of circumstances and considering the standard of living the child would have had if the parties had remained married." The court determined the child support modification should be retroactive to the date of the April 2, 2009 motion to modify

child support.

{¶73} The trial court enjoys broad discretion in modifying child support. *Murphy*, 13 Ohio App.3d at 389, 469 N.E.2d 564. Under an abuse of discretion standard, this court may not substitute its judgment for that of the trial court. *Sandel v. Choma*, 9th Dist. Summit No. 26895, 2013-Ohio-5410, ¶ 5, citing *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 1993-Ohio-122, 614 N.E.2d 748. Upon the record herein, I find the trial court did not abuse its discretion in awarding the incremental modification of child support retroactive to April 2009 when the motion to modify child support was filed. There are no facts in the record demonstrating "special circumstances" that would justify any other date.

{¶74} For these reasons, I dissent from this portion of the majority opinion. I concur with the remainder of the majority decision and would affirm the entire decision of the trial court.